UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AUSTRIAN AIRLINES OESTERREICHISCHE          :
LUFTVERKEHRS AG.,
                                            :

            Plaintiff,                      :          04 Civ. 3854 (LAK) (AJP)

                                            :
            -against-                                  **OPINION & ORDER**
                                            :
UT FINANCE CORPORATION.,
                                            :

            Defendant.                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**ANDREW J. PECK, United States Magistrate Judge:**


            Presently before the Court is the motion of defendant UT Finance Corporation

("UTF") for attorneys' fees and costs pursuant to its Aircraft Purchase Agreement ("APA")[1] with

plaintiff Austrian Airlines Oesterreichische Luftverkehrs AG ("Austrian"). (Dkt. No. 163.)

            On July 18, 2008, following a bench trial, Judge Kaplan granted UTF's motion for

judgment of dismissal on partial findings; Judge Kaplan held that Austrian "has failed to establish

---

[1]     The APA states:

> 10.4    <u>Prevailing Party in Dispute</u>.  If any legal action or other proceeding is brought
> in connection with any provisions in this Agreement, the prevailing party will be
> entitled to recover reasonable attorneys' fees and other costs incurred in such action
> or proceedings.  The prevailing party will also, to the extent permissible by Law, be
> entitled to receive pre-and post-judgment default interest.

(Dkt. No. 167: Toriello Aff. Ex. 1: APA § 10.4.)  Additionally, the APA states:  "This
Agreement will in all respects be governed by and construed in accordance with the laws of
the State of New York."  (Toriello Aff. Ex. 1: APA § 10.1.)

that UTF breached the APA" and thus Austrian was "not entitled to recover any damages or costs,"[2]

and that "[a]s the prevailing party, UTF is 'entitled to recover reasonable attorneys' fees and other

costs incurred' in this action." Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.,

567 F. Supp. 2d 579, 600-01 (S.D.N.Y. 2008) (Kaplan, D.J.) (quoting APA § 10.4).

    For the reasons discussed below, UTF's fees motion is GRANTED in the amount of

$2,951,206.67 in fees and $314,464.45 in costs, for a total of $3,265,671.12 (plus prejudgment

interest, in an amount to be recalculated by UTF).

## BACKGROUND

    On August 1, 2008, UTF filed a motion for $3,939,425.10 in attorneys' fees, litigation

costs and pre-judgment interest. (Dkt. No. 163: Notice of Motion; Dkt. No. 166: UTF Fee Br. at

1, 9; Dkt. No. 167: Toriello Aff. ¶ 4.)[3] The request includes $2,523,896.73 in legal fees for UTF's

attorneys, Holland & Knight LLP,[4] through July 2008, $303,189.92 in costs, $500,201.18 in pre-

judgment interest, $43,988.63[5] in unbilled attorneys' fees and costs and $568,148 in "consultant and

---

[2] Austrian sought damages "in excess of $47.9 million." (Toriello Aff. ¶ 3; Dkt. No. 166: UTF Fee Br. at 9.)

[3] "This figure does not include time billed for this fee application." (UTF Fee Br. at 1 n.1, 3 n.2, 8 n.8; Toriello Aff. ¶ 4 n.1.)

[4] In addition, UTF retained Marshall Filler of Obadal, Filler, MacLeod & Klein, P.L.C. to "advise [UTF] on various Federal Aviation Administration ('FAA') regulatory issues." (Dkt. No. 165: Filler Aff. ¶ 1; see UTF Fee Br. at 9 n.9; Toriello Aff. ¶ 4 n.1.) Filler's firm billed UTF $74,926.27 in attorneys' fees and $2198.33 in costs, which are included in the general cost calculation. (Filler Aff. ¶ 3; see Toriello Aff. ¶ 4 n.2.)

[5] This $43,988.63 in unbilled fees and costs comprises $32,714.10 in fees and $11,274.53 in costs. (Toriello Aff. ¶ 8.)

expert witness fees and interest thereon." (UTF Fee Br. at 8-9; Toriello Aff. ¶ 4 & Exs. 2-4, 6, 15; Dkt. No. 176: Toriello Reply Aff. Exs. 23-25; Dkt. No. 164: Wilson Aff.)[6] Four Holland & Knight attorneys (partner John Toriello and three associates) and one paralegal accrued most of the 10,400.7 hours billed in this case between April 2004 and May 2008. (UTF Fee Br. at 3, 5-6; Toriello Aff. ¶¶ 5, 15-16 & Ex. 2: Overall Billing Summary.) The billable rate for Mr. Toriello began at $360 per hour and rose to $490.450 per hour; associate billing rates ranged from $202.50 to $328.50; and the paralegal's hourly billing rate rose from $130.50 to $170.[7] (See UTF Fee Br. at 5-6; Toriello Aff. ¶¶ 14-15.)

On August 22, 2008, Austrian filed papers in opposition to UTF's fees motion. (Dkt. No. 171: Austrian Opp. Fee Br.; Dkt. No. 172: Mulvihill Opp. Aff.) On September 8, 2008, UTF filed reply papers, noting that Austrian did "not take issue with any of the hourly rates that were charged," but rather challenged the appropriateness of certain specific fees and costs. (UTF Reply Fee Br. at 1; see also Dkt. No. 175: Antonecchia Reply Aff.; Toriello Reply Aff.)

---

[6] UTF also "reserves its right to seek additional fees and costs arising out of [Austrian's] appeal" to the Second Circuit of Judge Kaplan's July 2008 judgment of dismissal. (See Dkt. No. 174: UTF Reply Fee Br. at 10; see Toriello Reply Aff. Ex. 27: Austrian 8/21/08 Notice of Appeal; Dkt. No. 170: Austrian 8/21/08 Notice of Appeal.)

[7] UTF received a "10% discount on all fees because of the volume of work." (UTF Fee Br. at 5 n.4; Toriello Aff. ¶¶ 14-15.) All hourly rates factor in this 10% discount.

## ANALYSIS

### I.  THE LEGAL STANDARD FOR DETERMINING ATTORNEYS' FEES

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. . . . The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended.' . . . Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  Hensley v. Eckerhart, 461 U.S. at 433-34, 103 S. Ct. at 1939-40.[8/]  Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward."  Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations.").

---

[8/]  The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees.  E.g., N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

This year, however, the Second Circuit acknowledged that the lodestar's "value as a metaphor has deteriorated to the point of unhelpfulness," and abandoned use of the term due to longstanding confusion regarding its proper application, while leaving the methodology essentially the same.[9/] Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190. The Second Circuit held that:

> [T]he better course – and the one most consistent with attorney's fees jurisprudence – is for the district court, in exercising its considerable discretion, to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors;[10/] it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

---

[9/]   The Second Circuit added: "While we do not purport to require future panels of this court to abandon the term – it is too well entrenched – this panel believes that it is a term whose time has come." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190 n.4.

[10/]   The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190.[11]

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees."[12] Hensley v. Eckerhart, 461 U.S. at 440, 103 S. Ct. at 1943; accord Farrar v. Hobby, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992); Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 2008 WL 3255130 at *15; Kassim v. City of Schenectady, 415 F.3d 246, 253-54 (2d Cir. 2005); Pino v. Locascio, 101 F.3d 235, 237 (2d Cir. 1995).

---

[11] See also, e.g., Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 2008 WL 3255130 at *15 (2d Cir. Aug. 8, 2008); Supreme Oil Co. v. Abondolo, 568 F. Supp. 2d 401, 409 (S.D.N.Y. 2008) ("In the Second Circuit, fee awards are determined by the 'presumptively reasonable fee' method.") (citing Arbor Hill); Luca v. County of Nassau, No. 04-CV-4898, 2008 WL 2435569 at *7 (E.D.N.Y. June 16, 2008) ("While a panel of the Second Circuit has recently recommended abandoning the term 'lodestar' in favor of 'presumptively reasonable fee,' the methodology remains the same.") (citation to Arbor Hill omitted); Rozell v. Ross-Holst, 05 Civ. 2936, -- F. Supp. 2d --, 2008 WL 2229842 at *4 (S.D.N.Y. May 29, 2008).

[12] "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." Hensley v. Eckerhart, 461 U.S. at 440, 103 S. Ct. at 1943. However, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id. at 435, 103 S. Ct. at 1940; see, e.g., Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) ("So long as the plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount.") (citing Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992)), cert. denied, 506 U.S. 1053, 113 S. Ct. 978 (1993); Torres v. Barnhardt, 02 Civ. 9209, 2007 WL 1810238 at *14 n.15 (S.D.N.Y. June 25, 2007) (Peck, M.J.); see also cases cited at page 22-23 below.

"There is no precise rule or formula for making these determinations." <u>Hensley</u> v. <u>Eckerhart</u>, 461 U.S. at 436, 103 S. Ct. at 1941. "The district court has broad discretion in" determining if time was reasonably expended and "need not . . . scrutinize[] each action taken or the time spent on it," <u>Aston</u> v. <u>Sec'y of Health & Human Servs.</u>, 808 F.2d 9, 11 (2d Cir. 1986), but the Court has a duty to discount any "[e]xorbitant, unfounded, or procedurally defective fee applications" and ensure the final award is reasonable. <u>Comm'r, I.N.S.</u> v. <u>Jean</u>, 496 U.S. 154, 163, 110 S. Ct. 2316, 2321 (1990).

<u>Hensley</u>, <u>Arbor Hill</u> and most of the cases cited above involved awards of <u>statutory</u> attorneys' fees. The inquiry is much simpler in contractual attorneys' fees situations, where there cannot be any enhancement of the fees actually charged the client. Moreover, particularly in determining contractual attorneys' fees, "there is a strong presumption that the lodestar figure [<u>i.e.</u>, the hourly rate times hours expended] represents the 'reasonable' fee" and the party advocating a reduction in the amount "bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee." <u>Grant</u> v. <u>Martinez</u>, 973 F.2d at 101 (citations & internal quotations omitted).[13]

---

[13] See also, <u>e.g.</u>, <u>DLJ Mortg. Capital, Inc.</u> v. <u>Sunset Direct Lending, LLC</u>, 07 Civ. 1418, 2008 WL 4489786 at *9 (S.D.N.Y. Oct. 6, 2008) ("'strong presumption' that the lodestar figure was the reasonable fee . . ."); <u>Wise</u> v. <u>Kelly</u>, 05 Civ. 5442, 2008 WL 482399 at *3 (S.D.N.Y. Feb. 21, 2008) (same); <u>Diaz</u> v. <u>Paragon Motors of Woodside, Inc.</u>, No. CV-03-6466, 2007 WL 2903920 at *4-5 (E.D.N.Y. Oct. 1, 2007) ("[T]he 'party advocating such a departure [from the lodestar], however, bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee.'"); <u>Trs. of Bricklayers & Allied Craftworkers Local 5</u> v. <u>Helmer-Cronin Constr., Inc.</u>, 03 Civ. 0748, 2005 WL 3789085 at *6 (S.D.N.Y. Oct. 24, 2005) ("There is a strong presumption that the lodestar amount represents a reasonable fee. (continued...)

## II.    **APPLICATION**

Austrian does not contest that UTF deserves attorneys' fees as a prevailing party under APA § 10.4, and does not contest, for the most part, Holland & Knight's hourly rates.[14]    (See generally Dkt. No. 171: Austrian Opp. Fee Br.)  Austrian does argue, however, that UTF is not entitled to recover fees for "unnecessary and time-wasting endeavors." (Austrian Opp. Fee Br. at 2.)

---

[13]    (...continued)
The party seeking an adjustment to the lodestar amount bears the burden of establishing that an adjustment is necessary in order to calculate a reasonable fee.") (citation omitted); Lewis v. Triborough Bridge & Tunnel Auth., 97 Civ. 0607, 2001 WL 1898318 at *3 (S.D.N.Y. Aug. 6, 2001) (same); Colbert v. Furumoto Realty, Inc., 144 F. Supp. 2d 251, 262 (S.D.N.Y. 2001) (same).

[14]    Austrian objects to Holland & Knight's claim that its attorneys' fees award should include $69,778.96 it mistakenly failed to bill UTF in 2005 "when it inadvertently did not raise the rates it billed UTF for 2005." (Dkt. No. 167: Toriello Aff. ¶ 19 & Ex. 15: Corrected 2005 Invoices; Austrian Opp. Fee Br. at 13-14.)  Austrian argues, and this Court agrees, that "[i]t seems likely that this significant undercharging of fees to UTF would never have been discovered had UTF not prevailed on the merits in this litigation," and that "UTF never would have agreed to Holland & Knight retroactively raising the rates it charged UTF 3 years earlier had UTF not prevailed in this litigation." (Austrian Opp. Fee Br. at 14.)  UTF maintains that "[t]he corrected rates merely align[] the rate charged with the actual fee arrangement between [Holland & Knight] and UTF" (Dkt. No. 174: UTF Reply Fee Br. at 7), but UTF provides no evidence of such an agreement, and merely states that it has "corrected this error and submitted corrected invoices to UTF for payment of the corrected amounts" (Toriello Aff. ¶ 19).  Without more, it would be unfair to require Austrian to pay for UTF's counsel's 3 year old billing mistake, especially given the ease with which a law firm could manipulate fee arrangements once it is clear that its adversary will foot the bill. See, e.g., F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1267 (2d Cir. 1987) (refusing to award "retroactive higher fees . . . without evidence of such an agreement between" counsel and client; client's "belated oral agreements to pay its attorneys retroactively at ever increasing rates [is] an impermissible 'manipulat[ion] of the actual damage incurred,' . . . resulting in an unwarranted burden on [the opposing party] to which the parties did not in fact agree."). Austrian, therefore, should not pay the revised rates, and UTF's attorneys' fee award will be reduced by $69,778.96.

Specifically, Austrian argues that any award should not include UTF's attorneys' fees for: (I) work on its unsuccessful summary judgment motion (Austrian Opp. Fee Br. at 6-7), (ii) work attempting "to disqualify Austrian's two expert witnesses" (id. at 7-8), (iii) work on UTF's unsuccessful Rule 11 motion (id. at 8-9), (iv) fees spent in connection with three "duplicative and unnecessary expert witnesses" (id. at 9-10), (v) time Holland & Knight spent on "wasteful motion practice and overbroad [discovery] requests calculated to delay the discovery process" (id. at 10-13), and (vi) work done before Austrian filed its May 20, 2004 complaint (id. at 14-15).

Austrian also argues that "UTF should not be compensated for costs in excess of those allowed pursuant to Local Rule 54.1(c)." (Austrian Opp. Fee Br. at 15-18.) Specifically, Austrian argues that a reduction is appropriate because UTF "lumped" its various costs into broad categories that make it "nearly impossible for Austrian to deduce exactly what portion of UTF's 'costs' are taxable under the local rules." (Austrian Opp. Fee Br. at 17.) In the alternative, Austrian argues that UTF's fee application includes exorbitant expert witness fees and costs and insufficient documentation to determine the reasonableness of those costs. (Austrian Opp. Fee Br. at 19-20.)

Finally, Austrian argues that UTF is not entitled to prejudgment interest because "the APA is silent as to whether the right to pre-judgment interest entitles the prevailing party to interest on attorneys' fees," since it creates two independent rights: one to attorneys' fees and one to prejudgment interest. (Austrian Opp. Fee Br. at 21-22.)

## A.     UTF's Unsuccessful Summary Judgment Motion

_____Austrian argues that UTF should not recover any attorneys' fees for work on its unsuccessful summary judgment motion "[b]ecause this case was not . . . appropriate . . . for disposition by summary judgment" and because the choice to submit the motion was without "merit." (Dkt. No. 171: Austrian Opp. Fee Br. at 6-7.)  On June 1, 2007, Judge Kaplan indicated that he "would not decide the merits of UTF's Summary Judgment Motion," which UTF had previously submitted to Judge Casey (see Dkt. Nos. 89, 131-32), but UTF nonetheless asked Judge Kaplan to consider its motion two weeks later.  (Austrian Opp. Fee Br. at 6; Dkt. No. 172: Mulvihill Opp. Aff. Ex. B: UTF 6/15/07 Letter to Judge Kaplan at 1.)  Judge Kaplan denied UTF's request.[15/]  (See Austrian Opp. Fee Br. at 6; Dkt. No. 134: 6/18/07 Order.)  Austrian asks this Court to reduce UTF's attorneys' fee award by $96,184.55, which reflects Austrian's analysis of Holland & Knight's invoices for time spent on UTF's summary judgment motion.  (Austrian Opp. Fee Br. at 6; Mulvihill Opp. Aff. ¶ 3 & Ex. A: SJ Invoice Analysis.)

UTF responds that the summary judgment motion "was justified," that this Court did not discourage, and even "expected" such a motion, and that Judge Kaplan denied the motion because he "preferred to hear the merits of the case at the non-jury trial."  (Dkt. No. 174: UTF Reply Fee Br. at 2; Dkt. No. 176: Toriello Reply Aff. Ex. 17: 6/1/05 Hearing Tr. at 17, 30-34.) Furthermore, UTF argues that "much of the work that was involved in the preparation of the summary judgment motion was ultimately used to prepare the witnesses trial declarations, identify

---

[15/]     Austrian did not file a summary judgment motion "because this case was not an appropriate one for [such] disposition."  (Austrian Opp. Fee Br. at 6.)

exhibits, and prepare the trial memo," and thus reduced the time for preparing for trial. (UTF Reply Fee Br. at 2; see also Dkt. No. 175: Antonecchia Reply Aff. ¶ 20.)

This Court will reduce UTF's attorneys' fee award by $24,046.14, one-quarter of UTF's attorneys' fees for work on its summary judgment motion,[16/] in order to discourage wasteful motion practice, while at the same time recognizing that much of the work UTF put into the summary judgment motion was ultimately used to prepare for trial. Cf., e.g., Coach, Inc. v. We Care Trading Co., 99 Civ. 11672, 2001 WL 812126 at *16 (S.D.N.Y. July 18, 2001) (reducing attorneys' fee award, in part, due to unsuccessful summary judgment motion), aff'd in part, rev'd in part on other grounds, 67 Fed. Appx. 626 (2d Cir. 2002), cert. denied, 537 U.S. 1108, 123 S. Ct. 885 (2003); Samborski v. Linear Abatement Corp., 96 Civ. 1405, 1999 WL 739543 at *1-2 (S.D.N.Y. Sept. 22, 1999) (same).

### B. UTF's Motion To Disqualify Austrian's Expert Witnesses

Austrian argues that this Court should reduce UTF's attorneys' fee award by $72,525.90[17/] to exclude time spent "drafting motions to disqualify Austrian's two expert witnesses, Kenneth Aupperlee and Fred Leonelli." (Dkt. No. 171: Austrian Opp. Fee Br. at 7; see also Dkt. No.

---

[16/] The Court will use Austrian's figures (see Mulvihill Opp. Aff. ¶ 3 & Ex. A: SJ Invoice Analysis) to calculate the reduction. UTF did not contest the accuracy of Austrian's calculations in its reply papers, despite having had the opportunity to do so. (See UTF Reply Fee Br. at 2-3.)

[17/] This Court will use Austrian's analysis of Holland & Knight's invoices to calculate the reduction. (See Dkt. No. 172: Mulvihill Opp. Aff. ¶ 5 & Ex. C: Expert Testimony Invoice Analysis.) UTF did not contest the accuracy of Austrian's calculations, despite having had the opportunity to do so. (See Dkt. No. 174: UTF Reply Fee Br. at 3-4.)

110: UTF Mot. to Disqualify Aupperlee; Dkt. No. 124: UTF Mot. to Disqualify Leonelli.)  Judge

Kaplan denied UTF's motions without prejudice to deciding those issues at the bench trial.  (See

Austrian Opp. Fee Br. at 7; Dkt. No. 134: 6/18/07 Order.)   Austrian maintains that UTF's

disqualification motions "were completely unnecessary in the context of a bench trial" because "UTF

understood that [Judge Kaplan] intended to hear substantially all of the evidence and then decide

which evidence to rely upon and which to disregard."  (Austrian Opp. Fee Br. at 7 .)

UTF responds that while Judge Kaplan denied UTF's expert disqualification motions

claiming Austrian's experts' "theories regarding the subject Aircraft and whether it had ETOPS

certification or FAA approvals failed to meet the Daubert standards," Judge Kaplan ultimately

"validated" these assertions in his July 2008 Opinion.[18/]  (UTF Reply Fee Br. at 3-4.)  In addition,

_____

[18/]     Judge Kaplan's Opinion held:

> Moreover, it is patently absurd that Austrian actually would have believed that an
> aircraft that otherwise would have had to endure a rigorous evaluation by the FAA
> in order to be approved for use in ETOPS flights, an evaluation process that was in
> place to ensure that the aircraft met stringent safety standards, could avoid that
> process altogether simply because an FAA repair station issued a return-to-service
> order for a different aircraft predicated upon compliance with a different set of
> standards.

Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp., 567 F. Supp. 2d 579,
597 (S.D.N.Y. 2008).  UTF also refers to the following statement from the bench trial as
proof that Judge Kaplan ultimately agreed with assertions set forth in its expert
disqualification motions:

> THE COURT: Let's not take any time on this.  I don't ever want to get on an airplane
> because some party-hired expert offers his opinion based on reading of tea leaves that
> the FAA approved it.  That's not going to fly here.  Let's just go on.  In the absence
> of a certificate from the FAA, I'm not persuaded these ACTs were ever approved.

(continued...)

UTF argues that "[t]he motion to strike expert testimony also was ultimately used in the trial preparation and shortened that preparation."  (UTF Reply Fee Br. at 4.)

This Court will reduce UTF's attorneys' fee award by $18,131.48, one-quarter of UTF's attorneys' fees for work on its two expert disqualification motions, in order to discourage wasteful motion practice, but mindful that UTF used much of the work from the motions at trial, and that Judge Kaplan ultimately validated UTF's motions' key assertions.

### C.    UTF's Rule 11 Motion

Austrian argues that UTF should not recover any attorneys' fees for UTF's unsuccessful May 2, 2008 Rule 11 sanctions motion which asserted "that a factual statement in Austrian's trial brief was not supported by evidence."  (Dkt. No. 171: Austrian Opp. Fee Br. at 8-9; see also Dkt. No. 149: UTF Rule 11 Mot.)  On May 2, 2008, Judge Kaplan denied UTF's Rule 11 motion, describing it as a "waste of time and resources. . . . [that] presumably was motivated by a desire to focus the Court's attention on defendant's position on this issue . . . and perhaps also by ill will among counsel." (Dkt. No. 152: 5/2/08 Order; see Austrian Opp. Fee Br. at 8.)[19]  Austrian seeks

---

[18]    (...continued)
(Dkt. No. 176: Toriello Reply Aff. Ex.19: 5/28/08 Trial Tr. at 164; see UTF Reply Fee Br. at 4.)

[19]    Judge Kaplan added:  "The denial is without prejudice to renewal, should defendant [UTF] be so advised, at the completion of the case.  It is without prejudice also to a motion by plaintiff [Austrian] for, or the consideration by the Court sua sponte of, Rule 11 sanctions against defendant for the making of the motion." (5/2/08 Order; Austrian Opp. Fee Br. at 8.) "Austrian did not take the Court up on its invitation to seek sanctions against UTF for the filing of that motion."  (Austrian Opp. Fee Br. at 8.)

to reduce UTF's attorneys' fees by $10,925,[20] the amount "UTF appears to have expended . . . in preparing and filing the Rule 11 Motion." (Austrian Opp. Fee Br. at 8-9; <u>see also</u> Mulvihill Opp. Aff. ¶ 6 & Ex. D: Rule 11 Invoice Analysis.)

UTF responds that it filed its Rule 11 motion as "the only means open to it" when Austrian refused to withdraw a "grossly inaccurate statement" from its trial brief and Judge Kaplan denied UTF "permission to submit supplemental exhibits to rebut [the] baseless charge." (UTF Reply Fee Br. at 4-5; <u>see also</u> Dkt. No. 176: Toriello Reply Aff. Ex. 20: 3/13/08 UTF Letter to Judge Kaplan.) At trial, Judge Kaplan agreed with UTF regarding the validity of Austrian's statements on UTF's marketing efforts:

> Austrian further asserts that UTF had not commenced marketing the Aircraft at the time of the delivery deadline, thereby indicating that timely delivery was not essential. Austrian, however, introduced an exhibit at trial showing that UTF received no fewer than 12 inquiries regarding sale and lease opportunities for the Aircraft, inquiries that could have been made in response to UTF's marketing efforts. The Court therefore rejects Austrian's contention.

<u>Austrian Airlines Oesterreichische Luftverkehrs AG</u> v. <u>UT Fin. Corp.</u>, 567 F. Supp. 2d 579, 593 (S.D.N.Y. 2008).

UTF ultimately convinced Judge Kaplan regarding the disputed fact at the center of its Rule 11 sanctions motion, but the motion wasted time and resources, because UTF clearly could and should have contested Austrian's statement at trial, and not through the use of a pre-trial

---

[20] The Court will use Austrian's figures (<u>see</u> Dkt. No. 172: Mulvihill Opp. Aff. ¶ 6 & Ex. D: Rule 11 Invoice Analysis) to calculate the reduction. UTF did not contest the accuracy of Austrian's calculations in its reply papers, despite having had the opportunity to do so. (<u>See</u> Dkt. No. 174: UTF Reply Fee Br. at 4-5.)

sanctions motion.  Because UTF's used an inappropriate vehicle to challenge the disputed fact at issue, but cognizant of UTF's ultimate success on that issue, the Court will reduce UTF's attorneys' fee award by $8193.75, i.e., 75% of UTF's attorneys' fees for its Rule 11 motion. See, e.g., Goldberg v. Blue Ridge Farms, Inc., No. CV-04-5098, 2005 WL 1796116 at *5 (E.D.N.Y. July 26, 2005) (Plaintiff "not entitled to the $16,212.50 associated with the unsuccessful Rule 11 motion").

### D.    UTF's Allegedly "Wasteful," "Duplicative" and "Unnecessary" Expert Witnesses

Austrian argues that "[f]our of [UTF's five] expert witnesses rendered either nearly identical opinions on nearly identical topics, or opinions that were not presented or argued at trial at all."  (Dkt. No. 171: Austrian Opp. Fee Br. at 9-10.)  Specifically, Austrian argues that UTF retained experts Phillip Beck, Patrick Sturbelle, Michael Metcalf, and Michael Coviello to testify on the "exact same subject" of whether "the Aircraft was in a condition to be eligible for an FAA Certificate of Airworthiness" and immediate "FAR 121 and ETOPS operations." (Austrian Opp. Fee Br. at 9-10; see Dkt. No. 172: Mulvihill Opp. Aff. ¶¶ 7-9 & Exs. E-G: Sturbelle, Metcalf, & Coviello Expert Reports.)  Austrian asks this Court to reduce UTF's attorneys' fee award by $73,668.60, which Austrian calculates as the total amount Holland & Knight spent preparing these experts for deposition.  (Austrian Opp. Fee Br. at 10; see also Mulvihill Opp. Aff ¶ 10 & Ex. H: Expert Invoice Analysis.)

UTF responds that Austrian's claims are "baseless" because:  the Court "designate[d] Michael Coviello as a replacement expert for the then deceased Michael Metcalf" (see Dkt. No. 130), Sturbelle was a fact witness who also "was named as an expert so that he could testify to the opinions

that supported his actions during the delivery," and "Beck was retained precisely because he provided the expertise of a disinterested" Designated Airworthiness Representative with respect to this case. (Dkt. No. 174: UTF Reply Fee Br. at 5.) This Court agrees. The three expert witnesses were not duplicative and served three very different purposes: Coviello replaced a deceased expert, Sturbelle largely acted as a fact witness, and Beck offered independent expert testimony. This Court, therefore, will not reduce UTF's attorneys' fees for time spent preparing these expert witnesses.

###    E.    UTF's Discovery Tactics

Austrian asks this Court to "reduce UTF's demand for reimbursement of [attorneys'] fees accrued during the discovery period by an appropriate percentage – at a minimum, twenty percent," due to UTF's "campaign of wasteful motion practice and overbroad [discovery] requests calculated to delay the discovery process and increase Austrian's litigation costs." (Dkt. No. 171: Austrian Opp. Fee Br. at 10-13.) Austrian cites this Court's comment regarding <u>both parties'</u> "Mickey Mouse" discovery behavior (Austrian Opp. Fee Br. at 10-11; Dkt. No. 172: Mulvihill Opp. Aff. Ex. I: 3/15/05 Disc. Conf. Tr. at 10), and lists seven examples of "unnecessary, abusive, and wasteful conduct that helped to inflate UTF's legal bills" (Austrian Opp. Fee Br at 12-13). Austrian maintains that "[w]hile not all of the delay . . . is attributable solely to the actions of the defendant, UTF's abuse of the discovery process did substantially extend the time, and the expense, needed to complete discovery in this matter." (Austrian Opp. Fee Br. at 13.)

UTF counters that it "sought Court intervention when necessary due to [Austrian's] failure to produce entire categories of non-privileged responsive documents, disregard of discovery deadlines, contravention of Court orders, and refusal to make party witnesses available for

depositions." (Dkt. No. 174: UTF Reply Fee Br. at 6; Dkt. No. 175: Antonecchia Reply Aff. ¶ 3.)

In addition, UTF claims that the actions of which Austrian complains "consumed a relatively

insignificant amount of attorneys' time and had no significant impact on the fees in this matter."

(UTF Reply Fee Br. at 7.)

   Discovery began in this case in August 2004 and continued through May 31, 2005,[21]

during which time <u>both parties</u> engaged in certain unnecessary and time-consuming discovery

"motion" practice[22] that extended the discovery period, consumed this Court's time and resources

and increased both parties' legal fees. Both parties are to blame for failing to fully cooperate during

the discovery period. In addition, although Austrian asks this Court to make an across-the-board

reduction for "fees accrued during the discovery period," it has not provided the Court with an

estimate of those fees. (<u>See</u> Austrian Opp. Fee Br. at 10-13.) Nonetheless, this Court will reduce

UTF's attorneys' fees by $55,402.47, which constitutes approximately 5% of its attorneys' fees and

costs accrued during the discovery period.[23] <u>See</u>, <u>e.g.</u>, <u>Bristol Tech., Inc.</u> v. <u>Microsoft Corp.</u>, 127

F. Supp. 2d 64, 73-74 (D. Conn. 2000) (reducing attorneys' fees "by a percentage approximation that

---

[21] Judge Casey held an Initial Pretrial Conference on August 13, 2004 and set March 31, 2005 as a discovery cut-off date (Dkt. No. 12: 8/5/04 Order), which was later extended by this Court through May 31, 2005 (<u>see</u> Dkt. No. 40: 3/21/05 Order).

[22] Pursuant to the Local Rules and the Court's Chambers Rules, the discovery disputes for the most part were raised and resolved at conferences with the Court, with letter submissions but without formal motion practice.

[23] This Court used Holland & Knight's invoices from September 23, 2004 through July 12, 2005 (for services through May 30, 2005) to assess fees accrued during the discovery period, recognizing that these invoices also reflect fees unrelated to discovery. (<u>See</u> Dkt. No. 167: Toriello Aff. Ex. 6: Holland & Knight Invoices.)

portion which exceeds . . . reasonable and necessary" discovery efforts); <u>Kestenbaum</u> v. <u>Emerson</u>, 75 Civ. 5263 & 76 Civ. 3405, 1981 WL 1678 at \*3 (S.D.N.Y. Sept. 15, 1981) (reducing costs and expenses by 10% due to "wasteful and unnecessary discovery").

### F. <u>Fees For Work Prior to Service of the Complaint</u>

Austrian argues that this Court should not award UTF attorneys' fees and costs for work done "prior to the commencement of the litigation" because "[t]he APA allows the reimbursement of fees only in connection with 'a legal action or other proceeding.'" (Dkt. No. 171: Austrian Opp. Fee Br. at 14; <u>see</u> Dkt. No. 167: Toriello Aff. Ex. 1: APA§ 10.4.) Austrian notes that it filed its complaint on May 21, 2004, but that UTF seeks reimbursement of attorneys' fees commencing on April 28, 2004. (Austrian Opp. Fee Br. at 14; <u>see</u> Toriello Aff. Ex. 6: Holland & Knight Invoices.) Austrian calculates that UTF is requesting $9,724.95 in pre-complaint attorneys' fees. (Austrian Opp. Fee Br. at 15.)

UTF responds that "[t]hese [pre-complaint] fees were incurred because of the threatened litigation and are therefore recoverable." (Dkt. No. 174: UTF Reply Fee Br. at 7.) UTF points out that it retained Holland & Knight "during late April, 2004 in anticipation of [Austrian] imminently filing suit against it," and that Austrian's counsel sent Holland & Knight a "copy of the draft complaint on May 11, 2004." (UTF Reply Fee Br. at 7.)

This Court agrees with UTF. UTF was justified in retaining counsel when a lawsuit was reasonably anticipated (indeed, imminent), and should be reimbursed for its attorneys' fees for reasonable work done in advance of the actual commencement of suit.[24]

The Court will not reduce UTF's attorneys' fee award for work it did before May 20, 2004.

## III.   UTF'S REQUESTED "COSTS"

Austrian argues that "UTF should not be compensated for costs in excess of those allowed pursuant to [S.D.N.Y.- E.D.N.Y.] Local [Civil] Rule 54.1(c), "which only allows recovery of "enumerated" items such as, inter alia, certain transcript fees, "witness fees, mileage and subsistence for trial and deposition (if deposition used at trial) for non-party witnesses, interpreter costs (where the fee of the witness is taxable), and photocopies necessary for exhibits (but not merely for convenience of counsel or court)."[25]   (Austrian Opp. Fee Br. at 15.)   See S.D.N.Y. Local Civil Rule 54.1(c).   Austrian admits that the APA allows the prevailing party to recover "costs," but maintains that UTF has inappropriately adopted "an expansive definition of the term 'costs,'" that

---

[24]   Had plaintiff Austrian prevailed, it would be reasonable for it to collect attorneys' fees for preparing its complaint, and not just for fees once the complaint was formally filed in court.

[25]   Austrian maintains that "[w]ith respect to witness fees, Local [Civil] Rule 54.1 incorporates 28 U.S.C. § 1821," which "states that a witness shall be entitled to a fee of $40 per day for each attendance as a witness, shall be entitled to a travel reimbursement for actual expenses of travel where the witness utilizes a common carrier 'at the most economical rate reasonable available', and subsistence allowance based on a rate set by the federal government." (Dkt. No. 171: Austrian Opp. Fee Br. at 15-16.)   Austrian identifies "[t]he current per diem allowance set by the federal government for Manhattan from January to June 2008, [a]s $244 for lodging and $64 for meals and incidentals, for a total of $308 per day." (Austrian Opp. Fee Br. at 16; Dkt. No. 172: Mulvihill Opp. Aff. ¶ 22 & Ex. U: GSA Per Diem Rates.)

exceeds "those [costs] allowed pursuant to Local Rule 54.1(c)." (Austrian Opp. Fee Br. at 16.)[26/]

Austrian asks this Court to reduce almost all of the $860,435.96[27/] in "costs," by excluding those

costs "not permitted by Local Rule 54.1(c), and . . . thus not taxable to Austrian." (Austrian Opp.

Fee Br. at 16-17.)[28/] Alternatively, if this "Court does not apply Local [Civil] Rule 54.1(c) in

determining recoverable costs," Austrian asks this Court to reduce UTF's costs by $384,050 for

"duplicative and unnecessary expert witnesses." (Austrian Opp. Fee Br. at 18-19; see also Section

II.D above.)

UTF responds that Austrian's "restrictive interpretation [of costs] is not supported by

the" APA, and that the phrase "reasonable attorneys' fees and other costs" "demonstrates that the

parties contemplated that costs similar to attorneys' fees, such as expert fees, are recoverable." (Dkt.

---

[26/]   Austrian demands that UTF "set forth a proper list of those costs that are actually taxable . . .
under the Local Rules" to recover any of the costs it seeks. (Austrian Opp. Fee Br. at 18.)
Austrian argues that "it is nearly impossible for Austrian to deduce exactly what portion of
UTF's 'costs' are taxable under the local rules" because "UTF lumped all its various 'costs'
into 17 broad categories that do not contain sufficient detail to determine, inter alia, whether
they are proper." (Austrian Opp. Fee Br. at 17-18.) Austrian apparently refers to Dkt. No.
167: Toriello Aff. ¶ 7 & Ex. 4. Austrian ignores, however, that Holland & Knight's invoices
(Toriello Aff. Ex. 6) further break down the costs and disbursements. The Court finds that
detail satisfactory.

[27/]   Austrian arrives at this sum by adding $292,287.32 in "costs" and $568,148.64 "in fees paid
to expert and fact witnesses." (Austrian Opp. Fee Br. at 16.)

[28/]   Austrian claims that under Local Civil Rule 54.1(c), UTF may not recover "'costs' for
document preparation, photocopies, color photocopies, computerized legal research,
miscellaneous online research, outside copying services, courier services, long distance
telephone calls, postage, proofreading, secretarial overtime, tabs/velobind, telecopies,
Westlaw computerized research, and most of the 'Other' and 'OtherD'" costs listed in UTF's
invoices. (Austrian Opp. Fee Br. at 17; see generally Dkt. No. 167: Toriello Aff. Ex. 4:
Costs Analysis & Ex. 6: Holland & Knight Invoices.)

No. 174: UTF Reply Fee Br. at 8; Toriello Aff. Ex. 1: APA § 10.4.)  UTF points to other sections

of the APA that use the phrase "court costs," which connotes a more "restricted" view of costs, as

evidence that §10.4 makes a "general reference" to the "commonly understood" meaning of costs,

which includes "expert and witness fees and expenses," as well as other costs not listed in Local

Civil Rule 54.1(c).  (UTF Reply Fee Br. at 8, citing APA §§ 6.1, 6.2.)  Furthermore, UTF argues that

"[e]ven if the Court takes a restrictive view of the phrase 'other costs,' UTF is entitled" to recover,

as part of attorneys' fees, its disbursements for witness fees, fees for interpreters and court reporters,

and Westlaw and online research fees.  (UTF Reply Fee Br. at 8-9; see Toriello Aff. Ex. 4: Costs

Analysis.)

        Local Civil Rule 54.1, Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920 provide a

framework for determining the proper award of statutory court costs, available to the prevailing party

in all cases, but do not apply if a contractual provision or statute authorizes, as part of an attorneys'

fee award, costs and "related non taxable expenses," Fed. R. Civ. P. 54(d)(2)(A).  See, e.g., Crawford

Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 445, 107 S. Ct. 2494, 2499 (1987) ("[A]bsent

explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness

as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920.").[29]

---

[29]    See also, e.g., Langenberg v. Sofair, 03 Civ. 8339, 2006 WL 3518197 at *8 (S.D.N.Y. Dec. 7, 2006) ("When neither a contractual provision nor a statute authorizes an attorney's fee award, the costs that properly may be taxed by the prevailing party are those set forth in 28 U.S.C. § 1920 . . . , Federal Rule of Civil Procedure 54(d), and Local Civil Rule 54.1."); Barrera v. Brooklyn Music, Ltd., 346 F. Supp. 2d 400, 406 (S.D.N.Y. 2004); V-Formation, Inc. v. Benetton Group SpA 01 Civ. 610, 2003 WL 21403326 at *2 (S.D.N.Y. June 17, 2003).

In this case, a contractual attorneys' fee provision clearly – and undisputedly – provides for reasonable attorneys' fees "and other costs" (see Toriello Aff. Ex. 1: APA § 10.4), rendering Local Civil Rule 54.1 and 28 U.S.C. § 1920 inapposite. "[A]ttorneys' fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." See, e.g., J.S. Nicol, Inc. v. Peking Handicraft, Inc., 03 Civ. 1548, 2008 WL 4613752 at *18 (S.D.N.Y. Oct. 17, 2008) (Peck, M.J.) (citing Sup. Ct. & 2d Cir. opinions) (awarding, as part of contractual attorneys' fees, Westlaw costs); see, e.g., A.R. v. N.Y. City Dep't of Educ., 407 F.3d 65, 72 (2d Cir. 2005) (awarding expert witness fees under the Individuals with Disabilities Education Act); Pres. Coal. of Erie County v. Fed. Transit Admin., 356 F.3d 444, 450 (2d Cir. 2004) (awarding expert witness fees to prevailing party under the National Historic Preservation Act); Access 4 All, Inc. v. 135 W. Sunrise Realty Corp., No. CV 06-5487, 2008 WL 4453221 at *15 ("Under the [Americans with Disabilities Act], a court may award a plaintiff its expert witnesses' reasonable fees as a litigation expense."); Scholastic Inc. v. M/V KITANO, 362 F. Supp. 2d 449, 460-61 (S.D.N.Y. 2005) (awarding expert witness fees as part of attorneys' fees under contractual indemnity provision and the Carriage of Goods By Sea Act).[30/]

---

[30/]    See also, e.g., ATC Healthcare Servs., Inc. v. Personnel Solutions, Inc., 01 CV 762, 2007 WL 1893205 at *4 (S.D.N.Y. June 29, 2007) (awarding costs under contractual attorneys' fee provision, including "photocopy charges, telecopy and telephone expenses, minimal local transportation expenses, postage costs, and document retrieval and online research costs"); Brigiotta's Farmland Produce & Garden Ctr., Inc. v. Przykuta, Inc., No. 05-CV-273, 2006 WL 3240729 at *9 (W.D.N.Y. July 13, 2006) (awarding costs under contractual attorneys' fee provision, including "filing fee, photocopies, postage, express mail services, telecommunication services, [and] process service fees"); Ursa Minor Ltd. v. Aon Fin. Prods., Inc., 00 Civ. 2474, 2001 WL 1842042 at *9 (S.D.N.Y. May 30, 2001) (awarding
(continued...)

Furthermore, outside the framework of the local rules and statutory authority, Austrian does not question the reasonableness of the amount of UTF's costs, except to repeat its argument that UTF retained duplicative and unnecessary expert witnesses, and that this Court therefore should "disallow UTF's request to recover the fees it paid to such witnesses." (Austrian Opp. Fee Br. at 19.) As discussed above (see Point II.D above), UTF did not use duplicative or unnecessary expert witnesses, and this Court therefore will not make any reductions in the costs related to UTF's use of these witnesses.[31]

This Court, therefore, will not reduce UTF's requested amount for costs, which are recoverable as a component of contractual attorneys' fees.

## IV.  **PRE-JUDGMENT INTEREST**

Austrian argues that UTF is not entitled to an award of pre-judgment interest on attorneys' fees, because although the APA provides for prejudgment interest,[32] "[t]he APA does not

---

[30]  (...continued)
costs under contractual attorneys' fee provision, including "photocopying, printing, computerized legal research, travel expenses, long distance telephone charges, staff overtime, and courier fees").

[31]  In addition, because the Local Rules categories are inapplicable, UTF shall not be faulted for "lumping" its costs into "broad categories," as Austrian complains (see fn.26 above), since UTF's invoices provided specific cost amounts without regard to the summary chart's categorizations.  (See fn.26 above.)

[32]  The APA states:

10.4  Prevailing Party in Dispute.  If any legal action or other proceeding is brought in connection with any provisions in this Agreement, the prevailing party will be entitled to recover reasonable attorneys' fees and other costs incurred in such action
(continued...)

explicitly provide, as was required [by] the court in <u>Ursa Minor</u>, that interest may be added to an award of attorneys' fees." (Dkt. No. 171: Austrian Opp. Fee Br. at 21-22.) <u>See</u> <u>Ursa Minor Ltd.</u> v. <u>Aon Fin. Prods., Inc.,</u> 00 Civ. 2474, 2001 WL 1842042 (S.D.N.Y. May 30, 2001).[33/]  Austrian

---

[32/]        (...continued)
                     or proceedings.  The prevailing party will also, to the extent permissible by Law, <u>be entitled to receive pre-and post-judgment interest.</u>

          (Dkt. No. 167: Toriello Aff. Ex. 1: APA § 10.4, emphasis added.)

[33/]    Austrian also argues that pre-judgment interest "arises, at the earliest, on the date the Court entered final judgment in favor of UTF." (Austrian Opp. Fee Br. at 21-22.) CPLR § 5001(b) states:  "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."  Austrian cites (Austrian Opp. Fee Br. at 21) several New York cases for the proposition that "prejudgment interest [on] attorneys' fees [does] not accrue until the services by the attorney [a]re actually completed" because "the date that all of the services [a]re completed . . . [i]s the earliest ascertainable date that the cause of action accrued or existed." <u>Negron</u> v. <u>Goldman</u>, 195 Misc. 2d 425, 428, 759 N.Y.S.2d 311, 313-14 (N.Y. Civ. Ct. 2003), <u>aff'd as modified,</u> No. 570752 1/01, 819 N.Y.S.2d 849, 2006 WL 1209339 at *1 (1st Dep't May 4, 2006).  This makes little sense to the Court.  "The underlying purpose of prejudgment interest . . . is the need to fully compensate the wronged party for actual damages suffered, <u>i.e.,</u> to make him whole." <u>Thomas</u> v. <u>City of Mount Vernon</u>, 89 Civ. 0552, 1992 WL 84560 at *3 (S.D.N.Y. 1992); <u>see also, e.g.,</u> <u>Samara</u> v. <u>Gangemi & Gangemi</u>, No. 02 CV 1407, 2005 WL 1076320 at *3 (E.D.N.Y. May 3, 2005) (awarding "prejudgment interest in order to provide full compensation to [unpaid counsel] for his legal fees"); <u>Stemcor USA, Inc.</u> v. <u>Atl. Transp. Ass'n, Ltd.,</u> 03 Civ. 4917, 2004 WL 2339779 at *4 (S.D.N.Y. Oct. 12, 2004).  In this case, UTF began to pay Holland & Knight's legal bills in November 2004.  (<u>See</u> Toriello Aff. Ex. 3: Billing History.)  If UTF is to be made whole, therefore, any pre-judgment interest award must begin to accrue when UTF paid each bill, and not when Holland & Knight completed its services.  Otherwise, pre-judgment interest on attorneys' fees would become a fiction, since counsel would not have finished its services until judgment is rendered.

          Alternatively, if New York law did require calculation of a prejudgment interest award on attorneys' fees to be based on the final judgment date, this Court would re-calculate the entire attorneys' fee award using Holland & Knight's current 2008 billing rates, instead of the historical rates used in UTF's current request and the Court's award.  <u>See, e.g.,</u> <u>Savoie</u> v.
                                                                                              (continued...)

maintains that the APA "creates two independent rights for a prevailing party in litigation: (I) the right to cover attorneys' fees and costs, and (ii) the right to receive pre-judgment interest." (Austrian Opp. Fee Br. at 22.) In other words, Austrian argues that absent more explicit language, the APA's pre-judgment interest provision refers only to interest on a damages award, which is irrelevant in this case. Austrian asks this Court to deny UTF's request for pre-judgment interest "in its entirety," or in the alternative, to reduce the pre-judgment interest award to "correspond[] with any reduction this Court makes to UTF's fees and costs award." (Austrian Opp. Fee Br. at 22.)

UTF responds that the APA entitles it to pre-judgment interest from the inception of litigation – and not from when counsel completed services – in order to make UTF whole; UTF, however, fails to respond to Austrian's argument that the APA does not provide for pre-judgment interest on attorneys' fees. (Dkt. No. 174: UTF Reply Fee Br. at 9-10.)

Courts in this Circuit regularly award pre-judgment interest on attorneys' fees. See, e.g., In Time Prods., Ltd. v. Toy Biz, Inc., 38 F.3d 660, 668 (2d Cir. 1994) (contractual attorneys' fees provision; interest allowed on attorneys' fees); Samara v. Gangemi & Gangemi, No. 02 CV 1407, 2005 WL 1076320 at *4 (E.D.N.Y. May 3, 2005); Muskin v. Ketchum, 04 Civ. 283, 2004 WL 2360151 at *1 (S.D.N.Y. Oct. 20, 2004). Austrian, however, argues that "'interest may only be added to a contractual award of attorneys' fees if explicitly provided for in the agreement'" (Austrian Opp.

---

33/ (...continued)
Merchants Bank, 166 F.3d 456, 464 (2d Cir. 1999) (affirming district court's decision to "adequately compensate[]" party by using current hourly rates to calculate fee award and therefore not also awarding pre-judgment interest); LeBlanc-Steinberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

Fee Br. at 22, quoting <u>Ursa Minor Ltd.</u> v. <u>Aon Fin. Prods., Inc.</u>, 2001 WL 1842042 at *9), and maintains that APA § 10.4 does not state explicitly that pre-judgment interest shall be awarded on attorneys' fees. (Austrian Opp. Fee Br. at 22.)

This Court is not convinced that <u>Ursa Minor</u>, or the Second Circuit case <u>Ursa Minor</u> relied upon, <u>F.H. Krear & Co.</u> v. <u>Nineteen Named Trs.</u>, 810 F.2d 1250 (2d Cir. 1987), requires contracts to specifically state that pre-judgment interest shall be awarded on attorneys' fees, as opposed to generally authorizing pre-judgment interest. The Court cannot tell from reading <u>Ursa Minor</u> and <u>F.H. Krear & Co.</u> whether the relevant contracts did not provide for <u>any</u> pre-judgment interest, or did not provide for pre-judgment interest on attorneys' fees. <u>Ursa Minor</u> sheds no light on this issue, simply stating that "there is no such [pre-judgment interest] provision," thus leaving it unclear whether the contract contained no pre-judgment interest provision at all, or no explicit provision awarding pre-judgment interest on attorneys' fees.

<u>F.H. Krear & Co.</u>, however, implies that the contract awarding attorneys' fees contained <u>no provision at all</u> regarding prejudgment interest, stating:

> The Contracts did not provide that the prevailing party would be entitled to interest on any payments made to its attorneys during the course of the litigation, and such a term should not be inferred absent specific language clearly indicating that this was the parties' intent. Further, so far as the record reveals, the initial retainer agreements between Krear and its attorneys did not call for Krear to pay the attorneys interest on bills unpaid; and as a matter of professional ethics, an attorney may not properly charge his client interest on unpaid bills unless, <u>inter</u> <u>alia</u>, the interest charges are reasonable and he has advised the client of such charges prior to rendering any services.

F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d at 1267. The Second Circuit quoted the contractual provision awarding attorneys' fees: "In the event of any litigation between the parties, the prevailing party shall have the right to reimbursement of reasonable attorney's fees in regards to such litigation from the other." Id. at 1255.[34/] It seems highly improbable that the Second Circuit would quote the attorneys' fee provision without also quoting a pre-judgment interest provision if such a provision existed, given the Court's denial of pre-judgment interest based upon the lack of such "specific language." F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d at 1267.

Furthermore, although APA § 10.4 does not explicitly refer to the prevailing party's entitlement to pre-judgment interest on attorneys' fees, this Court concludes that any other interpretation of the APA makes little sense. APA § 10.4 applies equally to a prevailing plaintiff and a prevailing defendant: any prevailing party in a "legal action or other proceeding . . . brought in connection with any provisions in" the APA receives the benefits of § 10.4. (Toriello Aff. Ex. 1: APA § 10.4.) If the APA does not award pre-judgment interest on attorneys' fees, then pre-judgment interest only applies to damages, which means that only a prevailing plaintiff can receive pre-judgment interest. A prevailing defendant, however, could never receive pre-judgment interest, because a prevailing defendant does not obtain damages. It appears to this Court that the parties

---

[34/] The District Court also quoted the contractual attorneys' fees provision, but did not quote any provision awarding pre-judgment interest. See F.H. Krear and Co. v. Nineteen Named Trs., 79 Civ. 6687, 1986 WL 2814 at *1 (S.D.N.Y. Feb. 25, 1996)

intended the APA to apply equally to a plaintiff and a defendant, and did not intend to favor a prevailing plaintiff over a prevailing defendant.

Moreover, the APA's prejudgment interest provision must entitle a prevailing party to pre-judgment interest on attorneys' fees or else it is mere surplusage; CPLR § 5001 already provides for the recovery of prejudgment interest "upon a sum awarded because of a breach of performance of a contract . . ."[35] C.P.L.R. § 5001(a).[36] The APA's pre-judgment interest provision would only re-state CPLR § 5001 if the parties intended to apply pre-judgment interest only to damages, and not to attorneys' fees. This would render the pre-judgment provision meaningless. The Court will not interpret the contract in a way that renders a provision meaningless.

For these reasons, the Court finds that pursuant to APA § 10.4, UTF is entitled to pre-judgment interest on attorneys' fees, at 9% from the date of payment (not the invoice date).

Austrian is correct, however, that any prejudgment interest award should be reduced to correspond to the cost and fee reductions the Court has made herein. Moreover, UTF incorrectly

---

[35] APA § 10.1 provides: "[t]his Agreement will in all respects be governed by and construed in accordance with the laws of the State of New York." (Toriello Aff. Ex. 1: APA§ 10.1.)

[36] See also, e.g., Grace v. Corbis-Sygma, 487 F.3d 113, 124 (2d Cir. 2007); Samasara Inv. III, LLC v. Wallace, 07 Civ. 9385, 2008 WL 4579693 at *2 (S.D.N.Y. Oct. 10, 2008); DLJ Mortg. Capital, Inc. v. Sunset Direct Lending, LLC, 07 Civ. 1418, 2008 WL 4489786 at *7 (S.D.N.Y. Oct. 6, 2008).

calculated pre-judgment interest (which Austrian failed to notice).[37] Accordingly, this Court directs

UTF to submit new interest calculations (reviewed by Austrian) by November 10, 2008.

## **CONCLUSION**

The Court grants J.S. Nicol's attorneys' fees, costs and expenses as follows:

| | |
|---|---|
| Attorneys' Fees Request | $ 3,124,759.47 |
| Costs Request | 314,464.45 |
| **Total Request:** | **$ 3,439,223.92** |

**Attorneys' Fees Reduction**:

| | | |
|---|---|---|
| Billing rate error (see II above) | -$ | 67,778.96 |
| Unsuccessful summary judgment motion (see II.A above) | - | 24,046.14 |
| Unsuccessful witness disqualification motion (see II.B above) | - | 18,131.48 |
| Unsuccessful Rule 11 motion (see II.C above) | - | 8,193.75 |
| Discovery tactics (see II.E above) | - | 55,402.47 |
| **Total Reduction:** | **-$** | **173,552.80** |

**TOTAL AWARD:** **$ 3,265,671.21**

For the reasons stated above, the Court grants UTF's motion (Dkt. No. 163) for

attorneys' fees, costs and expenses in the amounts of $2,951,206.67 for attorneys' fees and

---

[37] For example, on May 20, 2008, Holland & Knight billed UTF $237,375.18, which UTF paid on June 25, 2008. (See Toriello Aff. Ex. 3: Billing History.) UTF claims $22,944.10 in prejudgment interest on this sum, which accrued at 9% between June 25, 2008 and August 1, 2008. The 9% annual interest rate must be pro-rated to reflect the portion of one year – either greater or lesser – that the paid sum accrued. Here, $237,375.18 would have accrued interest for thirty-six days, or 9.8% of one year, which entails awarding prejudgment interest at .88% (9.8% x 9%), for a total of $2101.35 in prejudgment interest. This sum varies drastically from UTF's prejudgment interest figure of $22,944.10. UTF's other interest calculations are similarly mis-calculated.

$314,464.45 in costs, for a total of $3,265,671.12 (plus prejudgment interest, in an amount to be re-calculated by UTF).

### FILING OF OBJECTIONS TO THIS OPINION AND ORDER

Pursuant to 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Opinion to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Kaplan (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892

F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy

v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636; Fed. R. Civ. P. 72, 6(a), 6(d).


DATED:      New York, New York
            November 3, 2008


                                            _____
                                            **Andrew J. Peck**
                                            United States Magistrate Judge


Copies to:   John M. Toriello, Esq.
             Donna F. Mulvihill, Esq.
             Judge Lewis A. Kaplan